The next case is 5-14, 0239 W.C. Alliance Coal Company v. Workers' Compensation Comm'n Eric Collins, counsel, you may proceed. Thank you. Good afternoon. May it please the court, Mr. Landry. Kevin Haislip for the respondent. Thank you, Mr. Peller. The date of the accident, 2006, Mr. Clements was 33 years of age. He was 35 when he voluntarily removed himself from the workforce when he filed for Social Security Disability benefits in early, excuse me, either late 2007 or early 2008. We have that information from his vocational specialist, Mr. Law, who saw him in October 2008. That means Mr. Clements filed for Social Security Disability a year before he was released by his doctorate of maximum medical improvement and a year before TTD benefits were terminated. He was still on TTD when he decided to do this. At that point in time, there's no basis whatsoever. You're saying he voluntarily removed himself from the workforce? By filing for Social Security Disability. What was the date of that? He filed in very early 2008. He was receiving benefits and had been already approved in receiving benefits when he saw Mr. Law in October 2008. What do you make of this? Clements testified in spite of the restrictions he had looked for employment. He entered evidence in an exhibit containing a list of employers that he had contacted regarding employment between March 2010 and July 5, 2011. I don't think much of it. I don't know why he did that. He did it for two days in 2010. We didn't know anything about it. He did it again in two days in 2011, I believe in July, and then he emailed that to his attorney who sent it to me sometime in the latter 2011. So why he would do that, it's a great question. I don't know the answer to it, Judge. Okay. So Mr. Clements filed in and in December 2008, he sees Dr. King for the last time. At that time, Dr. King put him at MMI, released him essentially from care as far as what he could do for him, and basically indicated he was going to defer now to the pain management doctor, Dr. Roberts. However, Mr. Clements had stopped seeing Dr. Roberts in October 2008, and to my knowledge never went back to Dr. Roberts. That's important because Dr. King sort of punted on the issue of work capability. In the record and throughout his treatment of almost three years, Dr. King's only work restriction was, quote, sedentary work. That was it. No adjectives, nothing else to it, no weight restrictions, nothing. Sedentary work, I believe there are two of those work restrictions in the record. But when he released him and he then deferred back to Dr. Roberts, I guess it was his presumption that Dr. Roberts was going to take over the care from a pain management standpoint, and then he would be the one that would put any restrictions on him. All right, so the claimant got permanent total awards, benefits, as I understand it in this case, under the ADLAT theory, right? Isn't that what the commission means? Yes. All right, well, let me confront you with this. There's evidence that Dr. Lee placed the claimant on significant work restrictions, according to my notes. The opinions of your company's VOC experts, Duff and Bias, established that the claimant's restrictions rendered the claimant unemployable. The claimant's vocational expert, LAIK, opined that the claimant's conditions, skills, and education rendered him unemployable in any stable labor market, and further, the claimant could not undergo any training that would make him employable. So isn't that some evidence to support the commission's decision? It was if there was something that would back up. Mr. Laik, who saw him in October 2008, you have to ask yourself, on what medical basis could he render that opinion when there was nothing other than a note from Dr. King, the treating surgeon, saying sedentary work. Dr. Roberts never gave a single opinion about work restrictions, ever. So how in the world, in October 2008, and those are the questions I asked Mr. Laik, how can you give such an opinion that he is completely incapable of any type of work when he's still under active medical care? He just had an injection a month earlier. No doctor put him in MMI. No doctor put any kind of tremendous restrictions on him. How can you give such an opinion? Did he give the opinion? Yes. But what about the company's VOC experts, Duff and Bias? Well, Ms. Bias was one of the employees of the long-term disability program. Ms. Duff is a vocational specialist. Who hired her? The long-term disability portion of Alliance Call. This was for, there is a contractual relationship with the employees. They have tremendous benefits, and one of them is short-term disability and long-term disability. You have to meet certain rules and procedures to get long-term disability benefits. You cannot get it at the same time you're getting work comp benefits. But he's already applied for and receiving while on TTD, now he's getting social security disability. He knows he's got a long-term disability plan once work comp stops. He knows that's going to kick in. But Ms. Duff's opinions were based on the report of Dr. Lee, who was not a Section 12 examiner. Dr. Lee was a physician brought in by the long-term disability portion of the company, completely separated from work comp. One doesn't know what the other is doing. Admittedly, you may have some legitimate arguments to undermine her opinion, but nevertheless, her opinion was favorable to the claimant, was it not? For whatever reason, you are picking up on it. Her opinion was based on, and you can tell probably from the deposition, her opinion was based, Ms. Duff's opinion was based on Dr. Lee's report, report only, there was no deposition, from November 2008. He's still getting comp. She is giving an opinion, Dr. Lee, about his restrictions as they apply at that point in time, based on, I'm assuming, certain guidelines and procedures for long-term disability benefits. Our point is, that has no bearing. She is not a Section 12 examiner. Well, the doctor is giving an opinion about long-term disability, but in that opinion, the doctor says, this is caused by the work. And we don't disagree. In November 2008, he's still under active medical care. At that point in time, I don't disagree with it. But does that go forever? I mean, that was her opinion at that point in time for a very specific purpose of LTD benefits. And in June 2009, this is six months after Dr. King releases Mr. Clements and puts him at MMI, I get a letter from Mr. Clements' attorney at that time saying, Petitioner's attorney indicated there was no need to attempt a vocational rehabilitation of Mr. Clements. That's one of the two exhibits we put in. That's R1665 in the record. So six months after, now this is a year and a half after he's on Social Security Disability, but six months after he's released by his doctor, we get a letter saying, Don't even go there. Don't even go for voc rehab. All it's going to do is mess up the Social Security. If he gets a job, for all intents and purposes, he's going to lose Social Security Disability. So at that point in time, we hadn't taken any deposition of Dr. King. All we have from the treating doctors, and a lot, you know, most of the time, treating doctors carry the day versus examining doctors. So Dr. King just says sedentary work. That's it. Not a word from Dr. Roberts. So that's all we have as the respondent and the employer. He's at MMI. They don't want voc rehab. We have sedentary work. Mr. Long, who gives an opinion way premature. They should have gone back and did him six months or a year later and got his opinion after it reached MMI. But how do you give an opinion and don't even try to give this man a job? In this day and age, in 2010 or 2011, a 35, 36-year-old individual, we can't do anything for him. Paraplegics work, quadriplegics work, and this gentleman with a restriction only of sedentary work and nothing from the pain management doctor whatsoever. And this is all we can do? And then you get a letter from the attorney saying don't even go there as far as voc rehab. Why? Because he's going to try and use Dr. Lee. Dr. Lee is not the work comp section 12 examining physician in this case. Dr. Lee was brought in for one reason and one reason only. I'm not even contacted about it. They can't contact me. This has to be completely separate from work comp. So Dr. Lee does the examination. Whether there's guidelines and procedures and policies and a script or whatever that has to go into it, I don't know anything about that. But the point is she's not the section 12 examining doctor. So the question is who do we really look for for guidance for restrictions? Dr. King? Dr. King goes like this to Dr. Roberts. Dr. Roberts doesn't even know he's getting pointed at. But the only thing from Dr. King is sedentary work. The commission who dissented in the case I think really caught it and it really comes down to is he an odd lot permanent total? How do you take a 35 or 36-year-old individual in this day and age with our technology and just toss out his employment? The restrictions that Dr. Lee talked about, they're not permanent forever restrictions. They were for a very specific point in time for a very specific purpose for LTD benefits. I thought Dr. Lee said these are permanent restrictions and they were very specific. No standing more than two hours, et cetera, et cetera, et cetera. I don't remember the word permanent. I think I even had my brief that she did. And I think I'll underline the word not. She did not say that he was permanently totally disabled. Yeah. These are specific restrictions and they're permanent. And maybe for the purposes of LTD that could be. Again, I don't know anything about that. But, you know, the Work Life Act allows for situations like this. With Section 19H, be it increased disability or decreased disability, things change and people improve and people get worse. But for this point in time that we're talking about, from the treating physicians, if the best that we have is sedentary work only, and then the only other opinion that sort of flies in the face of that is Dr. Lee was doing it for a very specific, totally different purpose. And I think there's a problem with an award of ILOC permanent total disability. I think the circuit court saw some problems with this decision and the judge included that in his order. But I think it's a situation where he has been approved for and has been receiving social security disability benefits now for five years. If he finds employment or if we revoke rehab him, the chances are he's going to lose that, whether he would probably then go to LTD benefits. But I think the dissent is correct. I think this is an award for permanent partial disability of 75% of a lay. There are other reasons that I put in my brief I won't go over again as far as why. It's really a credibility issue from the standpoint of, you know, why do you file for social security disability a year before you're released by your doctor? And, you know, we know from the record and what Mr. Locke said, he was apparently separated from his wife, two very young children at home. And as I put in my brief, his income, 43% higher with work out of social security, 43% higher net income. It's a strong incentive not to go back to work. Thank you. Thank you, counsel. Counsel, you may respond. Good afternoon. May it please the court, counsel. My name is Nate Lantern. I represent the petitioner in this case, Eric Clements. There is sufficient evidence to support the commission's finding of permanent total disability. And I want to focus on the totality of the evidence in this case. And also I want to focus on what is not in the evidence. And I'll start with the evidence. I'll do this bit of analysis backwards. The respondent did absolutely nothing to show that there was suitable work. It was regularly and continuously available to the petitioner. No job list was done, no written assessment of employability, no labor market survey. So what we do have is that Clements, Mr. Clements, suffered a horrific injury to his left lower leg. A huge form came down, crushed his left lower leg, resulting in two surgeries, perhaps three, numerous injections to control pain and swelling, which he was told was going to be permanent. Very significant restrictions he was placed under by Dr. Lee. And there's also, I think importantly, a discussion with Dr. King with Eric Clements about his need to elevate the leg. The swelling, which would happen, which would cause the tissue to burst, he would have to periodically and quite often elevate the leg to above heart level. And that affected his employability, even his ability to sit in a classroom. So that was something that wasn't mentioned by counsel. But we've got two very qualified vocational opinions, one by Lauch and Duff, that even at a sedentary level, he's not employable, and there are no contrary opinions. And they're even bolstered by the opinions of Ms. Bias, who was, as counsel said, the long-term benefit coordinator, or at least someone employed by them for Alliance Coal. And my client did perform a job search. Now, at least the ones that we have that were mittened evidence on that piece of paper, there are not many. But he also testified how he talked to family members, he talked to friends about possible employment opportunities, how he didn't always write them down because the continuing, you know, being, I guess, rebuffed or disappointed about employability options made him feel depressed. But then, you know, if we're looking at this from an odd lot standpoint, the burden then shifts to the employer to show that there was some work regularly and continuously available and nothing was done here, absolutely nothing. So the standards manifest way the evidence. This is a fact question. And so as such, the commission's decision that he is odd lot, permanently disabled, must be affirmed. And with regard to his credibility, Mr. Clement's credibility, there is no professional, medical, or vocational person in this case whose question is credibility or motivation. That's a matter for the commission anyway, with regard to all these witnesses. That's correct. Okay. Absolutely correct. Now, I know there is case law out there regarding odd lot, permanently disabled, where there's been a voluntary removal from the workforce by employment. And I don't think that's what happened here. That is not what happened here with regard to my client seeking social security disability. Now, true, the case was handled by a different petitioner's attorney before I was brought on to finish this case. But Mr. Clement did testify that if there was work available for him, he would go back and he would attempt to do it. And there's nothing to the contrary. Didn't he provide himself a document saying that he applied for all these different places? Yes, he did. Okay. So there was some evidence of his job search. That's correct. And it was sufficient for the commission. I would submit that Dr. Lee is an examiner. I don't care if she's Section 12 or not. She did issue some permanent restrictions. Dr. King did talk to, as I mentioned before, Mr. Clement about having to elevate his leg. So if you look at all the evidence in its totality, there is sufficient evidence to affirm the commission's decision to award him this case. And with regard to counsel's statements about paraplegics, it doesn't take into consideration Mr. Clement's ongoing complaints of pain and swelling. Some paraplegics, and probably most paraplegics, don't have to deal with the need to elevate their legs in a manner that Mr. Clements has to. And also, it doesn't take into account the difference in available super-employment opportunities in urban versus rural areas and the opinions of the vocational experts in this case. It also aligns Cole's lack of providing any meaningful vocational assistance to Mr. Clement. Thank you. Thank you, counsel. Counsel, you may reply. Counsel said the respondent did nothing. Well, when you file for Social Security, you've given us your indication of what your intent is. And when your attorney sends us a letter saying, don't even go to voc rehab in June 2009, are we supposed to force it? That's their election at that time. There's a letter in the record from the attorney at that time in June 2009. Don't even go there as far as voc rehab. So, of course, what are we supposed to do? I mean, send a sheriff over and force him to do something? We did nothing because they had already made the decision. He was going on Social Security. He went on Social Security. I don't know that I've ever seen a situation where someone has gone on Social Security a year before they reach MMI. I really don't even know how something like that happens, but it did happen in this case. He was getting those benefits in this case. The opinions from the voc specialists, for anything else, they're just premature. They're too early. Why do you get an opinion? Why do you send your client to a vocational specialist? Now, Mr. Lander, the prior attorney. Why your client is still treatment a month after you just had a spinal injection to get a vocational evaluation, and then you get that, and then eight months later you say, don't even go there as far as voc rehab. There's nothing restricting this gentleman from going back to work because that issue hadn't come up yet. He's still under active medical treatment. It's December 2008 before he sees Dr. King for the first time. If somebody would have asked the question at that time, what are the restrictions from the treating doctors, the only thing you will see is Dr. King's note saying, continue work status as before, and that before work status was sedentary work. It wasn't lift your leg. It wasn't this. It wasn't that. And he was just going to defer to Dr. Roberts for pain management, but he never went back to Dr. Roberts. October 2008 was the last time he saw Dr. Roberts, or September 2008. So you have premature opinions. You have the attorney saying, we're declining voc rehab. So that's why we did nothing, because we were instructed by his attorney not to do anything. At that time, by the end of December 2008, he's still getting TTD. He's getting social security disability, and when he reaches his MMI, TTD stops, and then he goes on long-term disability. But this is all set out. It's not some devious plan. It's just the way things work out after two or three years. He's separated from his wife. He's got two young kids, and now he's bringing in $50,000 a year after taxes. That's his income versus after taxes of about $35,000 when he's working. So there's a huge incentive there not to mess up anything. And, again, we would ask that you look at this and award permanency to the leg. Thank you. Thank you, counsel, both for your arguments in this matter. We take no advisement that this position shall rest you.